**GLOBAL LEASING INC., Plaintiff,**

v.

**HENKEL CORPORATION and Mallinckrodt, Inc., Defendants,**

**Teamsters Local 560 Benefits Funds and New Jersey State Board of Mediation, Necessary Parties.**

Civ. A. No. 89–2674 (JCL).

United States District Court,
D. New Jersey.

Aug. 10, 1990.

Richard Muser, Clifton, Budd & DeMaria, Fort Lee, N.J., for plaintiff.

Dennis P. Blake, Brown & Connery, Westmont, N.J., for defendant Henkel Corp.

John J. Baldino, Hackensack, N.J., for defendant Mallinckrodt, Inc.

Bennet D. Zurofsky, Reitman, Parsonnet, Maisel & Duggan, Newark, N.J., for Trucking Employees of North Jersey Pension Funds.

## OPINION

LIFLAND, District Judge.

This is an action for declaratory and injunctive relief under the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* ("NLRA") and the Employee Retirement Income and Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381–1453 ("MPPAA").

Global Leasing, Inc. ("Global") brings this suit against Mallinckrodt, Inc. ("Mallinckrodt") and Henkel Corporation ("Henkel") over a dispute concerning liability for withdrawal from the Trucking Employees of North Jersey Pension Funds (the "Fund"), improperly identified in the Amended Complaint as the Teamsters Local 560 Benefits Funds.

Presently before the Court is the motion of Mallinckrodt/Henkel[1] to dismiss the Amended Complaint and/or for summary judgment for the following reasons:

1. a declaratory judgment is inappropriate as no actual controversy exists,

2. plaintiff has failed to exhaust administrative remedies,

3. plaintiff lacks standing to assert a claim against Mallinckrodt under MPPAA, and

4. plaintiff has failed to allege breach of contract.

For the following reasons, the court grants the motion in part and denies the motion in part.

BACKGROUND

Pursuant to a contract dated July 1981, Global leased truck drivers to Mallinckrodt in connection with Mallinckrodt's facility in Jersey City, New Jersey. In 1987, Henkel took over the operation of the Jersey City facility and entered into a similar contract with Global. Pursuant to each of the contracts, Global was a party to a collective bargaining agreement with Trucking Employees of North Jersey. The collective bargaining agreement obligated Global to contribute to the Fund on behalf of drivers leased to Mallinckrodt and Henkel.

Henkel cancelled the contract with Global effective July 1, 1988. Global laid off the leased drivers and stopped making contributions to the Fund on their behalf. The Fund notified Global that it had incurred withdrawal liability under MPPAA. On October 18, 1989, Global began making interim payments to the Fund under protest. Global requested review of the Fund's determination and notified the Fund of its position that Henkel was the proper party against whom to assess withdrawal liability. The Fund has refused to pursue either Henkel or Mallinckrodt as parties responsible for withdrawal liability. On June 8, 1989, Global filed a notice of initiation of arbitration with the New Jersey State Board of Mediation regarding its obligation to pay the withdrawal liability assessed against it.

In this action, Global seeks a judgment declaring that Mallinckrodt and Henkel were the "employers" of the drivers as defined in ERISA, 29 U.S.C. § 1002(5) and the NLRA, 29 U.S.C. § 152, and that they are responsible for any withdrawal liability. Alternatively, Global seeks a judgment declaring that Mallinckrodt's and Henkel's contracts with Global require them to reimburse Global for withdrawal liability payments. Finally, Global seeks an order enjoining the New Jersey State Board of Mediation from proceeding with the arbitration until this court determines the obligations of the parties.

DISCUSSION

1. *Actual, Justiciable Controversy*

The Declaratory Judgments Act provides that "(i)n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "... (A) case is ripe for declaratory relief under the Declaratory Judgments Act ... where 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Employers Association of New Jersey v. State of New Jersey*, 601 F.Supp. 232 (D.N.J. 1985). Whether a particular controversy is sufficiently immediate and real must be evaluated on a case by case basis. *See Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp. of America*, 257 F.2d 485, 489 (3d Cir.1958). The fundamental test is whether the plaintiff seeks merely legal advice or whether a real question of conflicting legal interests is presented for judicial determination. *See Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1170 (3d Cir.1987).

Mallinckrodt/Henkel argue that there is no justiciable controversy and that a declar-

---

**1.** Henkel did not formally join in Mallinckrodt's motion to dismiss and/or for summary judgment. As Henkel and Mallinckrodt have sub-stantially the same interest with respect to the disposition of the motion, the court will treat them together in this opinion.

atory judgment would not serve any useful purpose in settling legal relations or in terminating the controversy because injury, if any, would only occur in the future by the operation of MPPAA arbitration provisions. This argument ignores the fact that Global is presently making interim withdrawal liability payments.

There is an immediate and real dispute among the parties regarding Mallinckrodt/Henkel's status as employers under MPPAA. The statute requires that an employer must begin making interim payments of withdrawal liability within 60 days of notice of liability. *See* 29 U.S.C. § 1399(c)(2). These payments must be made whether or not the employer has requested review by the plan's trustees or has initiated arbitration. *Id.* The Fund has demanded that Global make withdrawal liability payments and has designed a schedule of interim payments. Global has begun to pay the assessed withdrawal liability under protest, but claims the obligation is Mallinckrodt/Henkel's. While the extent of the injury, if any, may await arbitration, a controversy presently exists as to the obligation and Global is actually making payments, as it must under 29 U.S.C. § 1399(c)(2). In this Circuit, if a "corporation legitimately believes its status as an ["employer"] is doubtful it could bring a declaratory judgment action to have that question resolved by a federal court." *IUE AFL–CIO Pension Fund v. Barker & Williamson*, 788 F.2d 118, 129 (3d Cir.1986). Accordingly, declaratory judgment is appropriate regarding Global's claim that Mallinckrodt/Henkel are co-employers under MPPAA.

Global also seeks a declaratory judgment that Mallinckrodt/Henkel are obligated for withdrawal liability pursuant to the contracts between Global and Mallinckrodt and Global and Henkel. Schedule A of the contracts includes the following:

> Where applicable, lessee [Mallinckrodt/Henkel] also agrees to reimburse lessor [Global] at cost, for employee's Health, Welfare and Pension Funds contributions to local teamsters or other unions representing the employees, together with any other employee benefits paid to or in behalf of such employees as a result of a union agreement obligation.

Global's claim for reimbursement of withdrawal liability payments under the contract is also an immediate and real dispute. The contract exists, Global is making interim payments, and says those payments should be made by Mallinckrodt/Henkel.

2. *Exhaustion of Statutory Remedies*

■ Mallinckrodt/Henkel argue that Global's claim is not ripe until liability for withdrawal is determined after arbitration proceedings under the MPPAA. Specifically, § 1401 provides that "(a)ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of (Title 29) shall be resolved through arbitration." 29 U.S.C. § 1401. Thereafter, judicial review is authorized by 29 U.S.C. § 1401(b)(2).

The Third Circuit recently examined the mandatory arbitration provision of MPPAA in *Flying Tiger Line v. Teamsters Pension Trust Fund*, 830 F.2d 1241 (3d Cir.1987). In *Flying Tiger*, Tiger International, Inc. ("Tiger") divested itself of all stock of Hall's Motor Transit Co. ("Hall's"), a large interstate trucking company. Hall's subsequently filed a voluntary petition for reorganization under 11 U.S.C. §§ 1101–1174. Hall's also stopped making contributions to multiemployer pension plans. Trustees of the plans notified Tiger that it was jointly and severally liable for Hall's withdrawal liability. Tiger filed a complaint seeking declaratory and injunctive relief, and claimed that its status as an "employer" under MPPAA should be judicially determined before it was compelled to enter into arbitration. Tiger argued that arbitration could be bypassed as the case involved a question of pure statutory interpretation— namely, whether it was an employer under MPPAA.

The district court rejected Tiger's argument, identifying the need for factual determination by an arbitrator in the first instance. In particular, the court found that Tiger's status as an employer could only be determined after deciding whether

the divestiture of stock in Hall's was intended to "evade or avoid" withdrawal liability, as prohibited by MPPAA § 1392(c), which provides that "(i)f a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction."

The Third Circuit affirmed the decision of the district court and noted two reasons why the case should be submitted to arbitration. First, the statutory interpretation in the case involved an MPPAA section that Congress explicitly reserved for arbitration, i.e., § 1392 is within the range of §§ 1381 through 1399, and under § 1401 disputes involving determinations under those sections must proceed to arbitration. Second, there was a genuine factual dispute surrounding Tiger's divestiture of Hall's stock. As the case involved more than statutory interpretation, the Third Circuit held that it was appropriate that an arbitrator make factual findings in the first instance.

Important to the Third Circuit's decision in *Flying Tiger* was that the "evade or avoid" question falls within the §§ 1381 to 1399 range of issues for mandatory arbitration. In *Flying Tiger*, the court distinguished another Third Circuit case, *Barker, supra,* 788 F.2d 118. In *Barker,* the contributing employer, Barker & Williamson, Inc. ("Barker"), completely withdrew from a multiemployer pension plan. Sentinel Electronics, Inc. ("Sentinel") owned certain shares of Barker. When Barker defaulted on its withdrawal liability payments, the fund's trustees alleged that Sentinel and Barker were a single employer under MPPAA § 1301(b), effectively making Sentinel liable for the full amount of withdrawal liability. In discussing *Barker,* the *Flying Tiger* court noted that the trustees' determination that Sentinel was the constructive owner of Barker stock was outside the §§ 1381 to 1399 range and that the legal issue was simply whether Sentinel was an employer under MPPAA. The question of whether an entity was ever an "employer" may be resolved by the court " '... since its resolution determines the

arbitrator's authority over the dispute.' " *Flying Tiger, supra,* 830 F.2d at 1250, citing *Banner Industries, Inc. v. Central States, Southeast & Southwest Areas Pension Fund,* 657 F.Supp. 875, 882 (N.D.Ill. 1987).

In order to decide whether Mallinckrodt/Henkel are employers under MPPAA, the court need not address any issues under §§ 1381–1399. Thus, the issue of whether Mallinckrodt/Henkel were ever employers within the meaning of MPPAA may be resolved by this court. *Barker, supra.*

The court cannot, however, determine whether Mallinckrodt/Henkel have direct withdrawal liability to the Fund. The Amended Complaint seeks a declaratory judgment that "... to the extent withdrawal liability is owed to the fund, that obligation is Mallinckrodt, Inc.'s and Henkel's." Amended Complaint at 7. Such a determination *under the MPPAA* is for arbitration in the first instance. The court grants Mallinckrodt/Henkel's motion to dismiss this claim. However, the alternative claim for reimbursement *under the contract, see* Amended Complaint at 7–8, may be resolved by this court.

### 3. *Standing*

██ Mallinckrodt/Henkel contend that nothing in the MPPAA allows one employer to make a claim against another for withdrawal liability. According to Mallinckrodt/Henkel, the statutory scheme strongly suggests that trustees of a pension plan, as master of their own case, should select the employer or employers against whom they wish to proceed.

MPPAA requires a plan's trustees to determine initially whether a withdrawal has occurred. *See* 29 U.S.C. §§ 1382(1), 1399(b)(1)(A)(i). When the trustees conclude that a withdrawal has taken place, they notify the employer of the amount of liability and demand payment in accordance with an amortization schedule. *See* 29 U.S.C. §§ 1382(2), 1382(3), 1399(b)(1)(B). Within 90 days the employer may ask the trustees to conduct a reasonable review of

the computed liability. *See* 29 U.S.C. § 1399(b)(2)(A)(i). If a dispute remains, either party may initiate arbitration proceedings. *See* 29 U.S.C. § 1401(a). Mallinckrodt/Henkel argue that none of these provisions indicates that one employer may assert a claim against another.

Those courts that have resolved employer status questions before arbitration have been concerned with an entity's claim that it *never* was an employer and therefore cannot be compelled to enter into arbitration proceedings. *See Flying Tiger, supra,* 830 F.2d at 1251 (collecting cases). *See also, Barker, supra,* 788 F.2d at 129.

Global, however, does not contest the propriety of its involvement in the arbitration proceedings. Rather, Global seeks to include Mallinckrodt/Henkel in the arbitration proceedings.

Few cases have involved the ability of one employer to make a claim against another for withdrawal liability. Global relies on *Central Pennsylvania Teamster's Pension Fund v. Service Group, Inc.,* 645 F.Supp. 996 (E.D.Pa.1985), where the court implicitly found standing when it entertained a third party claim by one employer against another employer, although the trustees had only assessed withdrawal liability against one of the employers. The district court evaluated the objectives of MPPAA and concluded that "... the purpose of MPPAA is best served by exposing all parties that are 'employers' to their legitimate withdrawal liability." *Id.* at 998. *See also, American Stevedoring Corp. v. Burlington Indus., Inc.,* No. 85 C 4180, slip op., 1985 WL 5057 (N.D.Ill., Dec. 19, 1985) (suit involved direct claim for reimbursement, brought by first corporation which leased its employees to second corporation, where second corporation was obligated by contract to reimburse first corporation for pension contributions it made on behalf of employees; by addressing the merits, the court implicitly found standing).

Congress enacted MPPAA in response to its concern about the threat to the solvency and stability of multiemployer plans caused by employer withdrawals. *See Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S.

211, 215–17, 106 S.Ct. 1018, 1021–22, 89 L.Ed.2d 166 (1986). The House Report on MPPAA states that "[t]he primary purpose of the legislation is to protect retirees and workers who are participants in such plans against the loss of their pensions. The act is designed to foster plan continuation and growth because plan continuation and growth provide participants and beneficiaries [with the] greatest security against benefit loss." 1980 U.S.Code Cong. & Admin.News, pp. 2918–19. "... A primary objective of the legislation is to insulate plans to the extent possible from declines, through sounder funding, employer withdrawal liability, and plan reorganization...." *Id.* at 2933.

This language demonstrates that Congress' primary objective in enacting MPPAA was to protect multiemployer plan participants from financial instability related to plan funding. Giving Global standing to pursue its claims herein is consistent with this objective.

### 4. Breach of Contract

In its complaint, Global also seeks a declaratory judgment that Mallinckrodt/Henkel are obligated for withdrawal liability pursuant to the agreements between the parties.

Mallinckrodt/Henkel argue that the agreements only cover liability for pension plan contributions. According to Mallinckrodt/Henkel, Global's claim is for withdrawal liability payments pursuant to MPPAA.

Mallinckrodt/Henkel rely on *Superior Pocahontas Coal Co. v. Island Creek Coal Co.,* 840 F.2d 11 (4th Cir.1988) and *Debreceni v. Healthco–D.G. Stoughton Co.,* 579 F.Supp. 296 (D.Mass.1984). In *Superior Pocahontas,* defendant Island Creek Coal Company ("ICC") owned a coal mine and employed plaintiff Superior Pocahontas Coal Company ("Superior") to mine the coal. ICC agreed to make all payments "required under" a union contract. In turn, the union contract required that employers make contributions to a multiemployer pension plan based on the number of hours worked and the number of tons of

coal mined. The court held that ICC was not obligated to indemnify Superior for withdrawal liability because the withdrawal liability was required by MPPAA and was not "required under" the union contract.

In *Debreceni,* Healthco–D.G. Stoughton ("Healthco") was obligated under the terms of a contract with a union to contribute to a pension fund on behalf of covered union employees. Subsequently, Foster Medical Corporation ("Foster") bought the assets of Healthco. By the terms of the contract between Foster and Healthco, Foster agreed to assume "... all obligations and liabilities of the Seller under the (union contract)...." 579 F.Supp. at 297. The court held that the contract between Healthco and the union simply required the employer to contribute to the pension fund on behalf of its employees. The court concluded that withdrawal liability, a statutory liability under MPPAA, did not arise under the contract.

Global argues that the reimbursement clause in its contracts with Mallinckrodt/Henkel is much broader than those contracts involved in *Superior* and *Debreceni.* According to Global, the contracts obligate Mallinckrodt/Henkel to reimburse Global for pension fund contributions and other employee benefits paid *as a result of* a union agreement, rather than those arising under union contracts, as in *Superior* and *Debreceni.*

At this early stage of the proceedings, the court believes that Global's interpretation of the contracts more likely represents the intent of the parties. Reimbursement for pension fund contributions and other employee benefits paid as a result of a union agreement is a broader concept than reimbursement for obligations that arise under a union agreement. Regardless, there is clearly an issue of fact as to whether the parties intended the reimbursement to include withdrawal liability under MPPAA. Thus, to the extent Mallinckrodt/Henkel seek summary judgment on Global's claim for reimbursement under the contracts, the motion is denied.

## SUMMARY

In conclusion, the court grants Mallinckrodt/Henkel's motion to the extent Global seeks a declaratory judgment that Mallinckrodt/Henkel is obligated to pay withdrawal liability under MPPAA. The court denies Mallinckrodt/Henkel's motion to dismiss the Amended Complaint to the extent Global seeks a declaratory judgment that Mallinckrodt/Henkel is an "employer" under MPPAA.

The definition of "employer" under ERISA is very broad. *See* 29 U.S.C. § 1002(5). For the guidance of the parties, the court notes that under similar factual circumstances, courts have held lessees such as Mallinckrodt and Henkel to be employers. *See, e.g., Central Pennsylvania, supra,* 645 F.Supp. 996; *American Stevedoring, supra,* No. 85C 4180, slip op. (N.D. Ill. Dec. 19, 1985). At the appropriate time, this issue will be addressed further.

## ORDER

For the reasons set forth in the accompanying opinion, IT IS on this 9th day of August, 1990 ORDERED that Mallinckrodt/Henkel's motion to dismiss and/or for summary judgment is denied except to the extent the Amended Complaint seeks a declaratory judgment that to the extent withdrawal liability under MPPAA is owed to the Fund, that obligation is Mallinckrodt's and Henkel's; and

IT IS FURTHER ORDERED that Mallinckrodt/Henkel's motion to dismiss and/or for summary judgment is denied as to Global's claim for indemnification pursuant to the contracts between Global and Mallinckrodt and Global and Henkel.